**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Legacy Advancement,<br><br>        Plaintiff,<br><br>vs.<br><br>Vertex Education, LLC, and Legacy Traditional Schools-South Carolina,<br><br>        Defendants. | Civil Action No.: 6:24-cv-4047-JDA<br><br><br><br>**PLAINTIFF'S RULE 26(a)(2)(C) EXPERT WITNESS DISCLOSURE** |

       Plaintiff Legacy Advancement (hereinafter "Legacy" or "Plaintiff"), pursuant to Fed. R. Civ. P. 26(a)(2)(C) and the Court's Scheduling Order, submits the following disclosure of expert testimony by a witness who is neither retained nor specifically employed to provide expert testimony in this case and who has no duties to provide expert testimony to Legacy:

       1.     Pursuant to Fed. R. Civ. P. 26(a)(2), Legacy discloses that it expects to call Hunter Schimpff to provide fact and/or expert testimony.

       2.     Legacy has not retained or specifically employed Mr. Schimpff to provide expert testimony in this case. Mr. Schimpff is not an employee of Legacy.

       3.     While Legacy reserves the right to amend this disclosure, Legacy expects Mr. Schimpff to testify regarding the following general topics in an expert capacity:

           a. Public school charter sponsorship, including without limitation, application, approval, renewal and funding aspects of public charter schools.

      b. Branding and school name recognition significance in the public charter school sector.

4. While Legacy reserves the right to amend this disclosure, Legacy expects Mr. Schimpff to offer the following testimony based on his over fifteen years of experience working to open new public charter schools in Tennessee and various states across the country and working as a charter school authorizer in South Carolina:

      a. Public charter schools are schools of choice that conduct their own enrollment marketing and applications.

      b. For sponsored state authorized charter schools in South Carolina, the district boundaries are the state boundaries. In South Carolina, a state sponsored school district's geographic zone overlaps a local traditional school county district's geographic zone.

      c. Objective data around academic organizational performance and enrollment determines whether public charter schools are high performing.

      d. The public charter school sector is well aware of the names of high performing public charter schools.

      e. The strength and reputation of the brand name of the public charter school affects enrollment.

      f. Having the same or similar school names in South Carolina creates confusion at multiple levels, from the students and families, to the educators and staff members that work in public charter schools, to the sponsors and governmental officials involved in public charter schools.

    g. If one charter school with the same or a similar name receives a negative report or poor performance review, that would harm the reputation and by extension enrollment of another charter school with a similar name.

5. Mr. Schimpff supports his opinions based his extensive experience in education and the public charter school setting, as well as the relevant evidence and testimony from this case.[1]

  Prior to his professional work, Mr. Schimpff received a Master's Degree in Education Policy from Vanderbilt University. He then worked for the Tennessee Charter School Incubator, now known as Tennessee Charter School Center, which launched 16 new charter schools in Nashville and Memphis, TN during Mr. Schimpff's approximately 5 years working there. While there, Mr. Schimpff supported multiple aspects of new charter school growth and development, including facility development, helping hire new teams, enrollment strategy and execution, training new charter school boards, marketing and outreach support, and financial and operational support.

  This background led Mr. Schimpff to join the South Carolina Public Charter School (SCPCSD) District as a charter school authorizer, where he worked from 2016 to 2019. The SCPCSD is the largest sponsor (authorizer) of charter schools in SC by school count and the second largest sponsor by student enrollment count. Among the other charter school sponsors, the SCPCSD currently sponsors 33 schools. The state only has three other sponsors currently: Charter Institute at Erskine (Erskine), Limestone Charter Association (Limestone), and Voorhees University Charter Institute of Learning

---

[1] Attached as **Exhibit A** are Mr. Schimpff's deposition excerpts including facts relevant to specific opinions. *See also* Mr. Schimpffs' initial declaration (ECF 27-15).

3

(Voorhees). Voorhees is a new registered state authorizer but does not yet have any state sponsored public charter schools.

While at SCPCSD, Mr. Schimpff was the Director of Policy and Analytics and served on the SCPCSD Leadership team. In his role, Mr. Schimpff provided strategic thought leadership to the Superintendent, helped to manage the SCPCSD's annual budget, and was responsible for the SCPCSD's policy initiatives and government relations efforts. Mr. Schimpff also supported charter school accountability across the SCPCSD with a particular emphasis on financial performance management and academic oversight of schools in the district, new school application cycles, and revocation proceedings.

At SCPCSD, Mr. Schimpff worked on giving exposure to the charter school through reports and tours given to SC legislators. In his role at SCPCSD, he came to know Legacy and its charter school performance when it moved over to the SCPCSD portfolio. He observed that Legacy was a large school that served a high poverty population. Legacy was a consistently good performer based on the performance criteria of SCPCSD. The SCPCSD would hold it out as an example to other charter schools on how to succeed. Legacy's students had higher levels of academic achievement, and a high rate of high school graduation, as compared to other schools in the portfolio.

After leaving SCPCSD, Mr. Schimpff worked as an independent consultant to charter schools in the areas of financial performance and enrollment. He also worked as CFO for BES, a national non-profit that provides leadership training programs, including a program that provides support to leaders starting new public charter schools in states across the country. Here, he continued to support financial health of charter schools,

4

including working with schools to develop and manage budgets. Mr. Schimpff was also a founding board member of Compass Collegiate Academy (CCA) charter school in Charleston, South Carolina, and just concluded his board service as an unpaid volunteer at the end of 2024. Mr. Schimpff more recently began working for Great Schools North Carolina (GSNC), a nonprofit that is a grant making organization focused on charter schools in North Carolina.

Collectively, Mr. Schimpff has devoted over 15 years of his career to various aspects of charter school education in various states. In South Carolina, Mr. Schimpff learned charter schools are more autonomous in how they operate. By contrast, central state offices and central district county school offices do many functions for public schools. Charter schools often do not have a central office that handles administrative duties. A public school principal, for example, does not draft an entire school budget, but a charter school principal does. All charter school functions are at the local school level.

The funding of public charter schools is also more complicated than state public schools. Every charter school has its own 501(c)(3) entity and its own board of directors, the number and make up being selected according to legislation. Every charter school must have a sponsor.

For the charter schools sponsored by SCPSD, the majority of the funding comes from the state through the Education Finance Act (EFA) and Education Improvement Act (EIA). The EFA funding for charter school requires a weighted pupil unit (WPU) calculation, looking at various student demographic and characteristic factors. These factors generate a total Weight Per Unit (WPU) amount, which is then multiplied by a Base Student Cost (BSC) amount to determine the school's annual funding amount. The

greater the WPU the more funding the charter school gets under the EFA funding formula. EIA funds are considered categorical appropriation funds, a separate category of funds from the Legislature each year that covers certain programs, such as school reading coaches, that are not primary programs. In addition, certain funding comes from federal programs, including Title I.

Enrollment heavily impacts funding for public charter schools. Unlike district schools that enroll students from an assigned geographic zone, state public charter schools have no zone assigned students from which to enroll and are open enrollment schools of choice. State public charter schools have to go out and recruit students to enroll. As a result, the school's WPU and EFA revenue does not grow without sufficient or increasing enrollment. Therefore, brand recognition of these charter schools is very important, as students' and families' ability to recognize the school and its associated name determines enrollment numbers. Competing names could divert enrollment if parents are confused as to the name of the school.

With that backdrop, charter schools with the same or similar names are at risk of harm, both financial and reputational, if families, the community, educators, or sponsors are confused as to which is the actual chosen school and the actual chosen school program. Any press, whether it be negative or just confusing, has the potential to influence charter school reputation. A news article confused Mr. Schimpff regarding Erskine sponsoring numerous schools named Legacy. *See* ECF 43-4. Additional news articles that disparage or put a negative light on that sponsor further risk harm to charter schools with similar names that are not sponsored by Erskine. *See* ECF 43-11.

For at least these reasons and opinions, Plaintiff offers Mr. Schimpff as an expert under Rule Fed. R. Civ. P. 26(a)(2).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MAYNARD NEXSEN PC |
| April 4, 2025 | s/ *Sara Centioni Kanos* <br> Sara Centioni Kanos (Fed. ID #9978) <br> 110 S. Main St., Suite 900 <br> Greenville, SC 29601 <br> Telephone: 864-282-1171 <br> Facsimile: 864-282-1177 <br> E-mail: skanos@maynardnexsen.com |
|  | *Attorneys for Plaintiff* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing PLAINTIFF'S RULE 26(a)(2)(C) EXPERT WITNESS DISCLOSURE has been served upon the following counsel of record by electronic mail:

      John J Dabney
      Snell and Wilmer LLP (DC)
      jdabney@swlaw.com

      Mary Declan Hallerman
      Snell and Wilmer LLP (DC)
      mhallerman@swlaw.com

      Anne L Peterson-Hutto
      Anne Louise Peterson ESQ
      anne@peterson-hutto.com

      Morgan R Povinelli
      Snell and Wilmer LLP (DC)
      mpovinelli@swlaw.com

      Jennifer Munter Stark
      Jennifer Munter Stark Law Office
      jmunterstarklaw@gmail.com

This the 4th day of April, 2025.

      s/ *Sara Centioni Kanos*
      Sara Centioni Kanos (Fed. ID #9978)
      110 S. Main St., Suite 900
      Greenville, SC 29601
      Telephone: 864-282-1171
      Facsimile: 864-282-1177
      E-mail: skanos@maynardnexsen.com

      *Attorneys for Plaintiff*

# EXHIBIT A

## DEPOSITION TESTIMONY EXCERPTS

***a.   Public charter schools are schools of choice that conduct their own enrollment marketing and applications.***

Schimpff Depo, 44:20-23 ("Because Legacy or Compass Collegiate is a state-sponsored charter school, they don't participate in any of those centralized district applications, even if that's their local geographic district.").

Schimpff Depo., 44:24 – 45:1 ("[S]tudents and families don't really know or wouldn't get connected to attend that school without the marketing and outreach efforts.")

Schimpff Depo., 52:17 – 53:12 ("[W]e were doing, essentially, bias checks on those enrollment applications…. [A]s a compliance check, we would basically ask for the enrollment applications of every school around the state that was in our portfolio. We would review it and then provide any feedback.")

Schimpff Depo., 89:10 – 90:3 ("[M]ost charter schools are really … left on their own to conduct that enrollment marketing and take their own applications…. [I]f a family was applying to Legacy Early College in Greenville, they don't fill out an application and send that to the SCPCSD, their authorizer. They submit that application to the school. And so Legacy Traditional Schools would be operating the same way…. There is not a central sort of common application like … Charleston County, where there's a school choice application…. Magnet schools, charter schools that are district charter schools, were you submit a common application and you rank them, none of that exists for the state-sponsored charter schools.").

Schimpff Depo., 102:10-12 ("[The applications are] usually generated by the school and distributed by the school. Some schools have online application and some

have paper copies.").

Schimpff Depo., 103:10-20 ("[E]very charter school proactively, again, back to they proactively market, do outreach. They hand out applications…. [W]hether it be paper or they might send a parent a link to the online link, the schools would be distributing those [applications] for enrollment.").

Schimpff Depo., 44:3-12 ("[M]arketing and outreach efforts … could involve … sharing fliers at local daycares. It could be going to festivals, the local festivals and handing out fliers, having meet-and-greets with families and information sessions, conducting social media outreach, trying to get on … news pieces and news channels, really getting the name of your school out there, into the local community so that parents know that you are a school option.").

**b.     *For sponsored state authorized charter schools in South Carolina, the district boundaries are the state boundaries. In South Carolina, a state sponsored school district's geographic zone overlaps a local traditional school county district's geographic zone.***

Schimpff Depo., 42:5 43:10 ("[C]harter schools in South Carolina are open enrollment, so if you are a state-sponsored charter school like the SCPCSD, the district boundaries are the state borders. So you have the right to draw students from, in Legacy's case, Greenville County Schools, [Pickens] County Schools, if somebody wanted to drive that far or transportation was there. [T]hey're open enrollment public schools, which is unlike a … County school student zone assignment…. The district assigns which schools you are supposed to attend … That is not the case for open

enrollment public charter schools …. [A] school like Legacy … [has] to go and find all their students.  They are not zoned or assigned to attend school.").

### c. Objective data around academic organizational performance and enrollment determines whether public charter schools are high performing.

Schimpff Depo., 7:8-17 ("I … did performance accountability…. [C]harter school authorizers … basically manage their schools.  They're, essentially, the regulator of the schools and their portfolio, and part of that is monitoring performance…. I specifically looked at data frequently, academic data, financial data, operational data of the schools in our portfolio, and so part of my role was to produce reports, analyze how a school is doing.").

Schimpff Depo., 20:13 – 21:10 ("A best practice nationally for charter authorizers is to have a clear and consistent performance management framework so that you are making decisions around whether to renew a charter.  Charter terms are ten years in South Carolina…. [W]e were really serious about … the performance of these schools, and there's essentially a three-legged stool of: academics, finance and operational performance…. [W]e implemented a new performance management framework… [P]art of the role was implementing the framework and then … monitoring the data around that and then having checks and balances on that data and then making decisions at the executive leadership team level, always in consultation with the board of trustees of the [SCPCSD].").

Schimpff Depo., 34:15-21 ("[W]hen I worked for the [SCPCSD], we really tried to encourage schools that demonstrated strong academic performance and organizational

12

performance,… meaning they took care of the business aspect of being a charter school; they also demonstrated strong academic results. We wanted to encourage those schools to grow because that would mean more high quality seats for students around the state.")

Schimpff Depo., 80:18 – 82:13 ("[T]he performance framework that we implemented when I joined the SCPCSD … it's … three-pronged…. [T]here's an academic component of performance, a financial component of performance and an operational component of performance. Legacy consistently did well on all those components during my time that I was in the district and reviewing school performance…. [T]hey had strong academic achievement results…. [F]or their high school, their high school graduation rate was always consistently high, especially when you account for the student population they served…. [W]ith our state tests, there's essentially an inverse relationship between if you were to plot the poverty percentage of a school on the x-axis and the academic achievement on the Y, it is a downward sloping…. Legacy consistently bucked the trend in their elementary, middle and high school…. [V]ery high poverty high schools tend to have graduation rates in the 60's, 70's. Legacy's consistently was within the 90's and high 90's…. Charter schools not just … have to deliver the academic component of education. It is a small business, and so there is a component of managing a charter school … they manage finances; … they have enough cash on hand. We had metrics to all of these things that looked at academic indicators, financial indicators, your ratio of debts to assets…. Legacy always was a good steward of taxpayer funds and managed their funds well and … a consistent high performer. They turned their compliance things on time, their audits were on time, so they … scored well on our performance framework."

### d. The public charter school sector is well aware of the names of high performing public charter schools.

Schimpff Depo, 33:16 – 34:9 ("[W]hen I worked for the [SCPCSC] … the simple formula is encourage your strong schools to grow, to replicate, grow more… [W]e had conversations not just with Legacy but a number of other high performing schools during my time of expansion plans … with the goal of creating more high quality schools of choice, public enrollment options for families around the state.").

Schimpff Depo, 45:18 – 46: 5 ("It is a multifaceted effort…. You are door knocking. You are handing out fliers…. You are doing news stories … social media campaigns…. [A] school like Legacy … had been an established school, and when you have an established charter school that is especially high performing, word of mouth is essentially your best marketing outreach tool.  People know your name in the community; they know it's high performing.").

Schimpff Depo, 84:4-9 ("[I]t's a large charter school so there are a … significant number of people who have worked for Legacy Early College.  Outside of Greenville … people within education circles certainly have heard of and know of Legacy Early College.").

### e. The strength and reputation of the brand name of the public charter school affects enrollment.

Schimpff Depo, 43:12-23 ("Charter schools are paid strictly based off enrollment…. [A]s a charter school, and every open enrollment public charter school goes through this

in South Carolina, you have to go and market your school, your model, to attract students and families to attend. It's critical to your survival, and having a name associated with that is also very important.").

Schimpff Depo, 85:7-24 ("Your … brand identity ties to your reputation in the school…. [D]o you … take care of students and families…. [A]re they growing and learning academically. Parents certainly know a difference between a quality school and a nonquality school…. Your brand identity as a charter school is very significant, because … it ties to … the quality of school that you are for our students and families.").

Schimpff Depo, 86:1-6 ("[O]nce you get established, your identity as a school and your ability to attract new students, which ties directly to your revenue, is mostly word of mount, and so your identity and brand name is significantly important because that brand's name is essentially the currency for that word of mouth.").

Schimpff Depo, 102:1-5 ("[E]nrollment equals revenue, and there's a significant business consideration around your ability to go out, attract, enroll, retain families, which is very much tied to your brand name.").

*f.     Having the same or similar school names in South Carolina creates confusion at multiple levels, from the students and families, to the educators and staff members that work in public charter schools, to the sponsors and governmental officials involved in public charter schools.*

Schimpff Depo, 55:5 – 56:16 ("I had read an article … I was actually confused when I saw … that Erskine had approved [Legacy Traditional Schools] …. [I]s that legacy Early College in Greenville? … I was confused originally when I saw that…. [I]t was also

15

confusing … to get approved for [numerous] schools at one time, that's atypical in the authorizer world…. I had to skim it twice to understand … that's a different Legacy…. [T]here are a few levels of confusion there because it was – the name Legacy, that was confusing, and then the article was talking about how Erskine had approved [numerous] schools, and … did Legacy Early College go over to Erskine? …. [T]hat doesn't … make sense … because… they were performing well.").

Schimpff Depo, 57:11-58:3 ("[H]aving another school with a Legacy name could be confusing on multiple fronts…. [T]he parents could apply to that Legacy school thinking … I'm applying for my student to attend Legacy Early College… when in fact it's an entirely different model, school, et cetera.  [I]t's confusing in that sense…. [T]here's a second layer of … teachers and executive staff members, adults who have worked for Legacy Early College… and they may want to apply to teach at Legacy Early College, … but they apply to Legacy Traditional Schools.").

Schimpff 86:16 – 87:20 ("[I]t would be confusing … not just for students and families making a choice around where to enroll, where to send their student, but also … for staff members if they're going to look to work somewhere…. [T]here's a reason … [w]e don't' have two schools that have the same name…. [S]chools are tied to … identities of their school model, the quality, what it's like to work there…. [T]hat phenomena is not … limited to the charter school space…. It would just be confusing for the community and for parents.").

Schimpff Depo, 90:4 – 90:9 ("[A] family applying to Legacy Early College could easily get confused, thinking,… I'm applying to Legacy, but they submit the application to Legacy Traditional. Because there is no sort of system there of a common application to

… catch that or sort that to the right place.").

Schimpff Depo, 91:10-13 ("[A]uthorizers are distinct in the sense that they are approving their own schools…. There should be a check, and for that very reason of not wanting to confuse families.").

Schimpff Depo, 92:11-18 ("[W]hen I was at the authorizer, it certainly would have been a problem a school had applied with an already existing name…. [W]e would have had to have a conversation with that school.").

Schimpff Depo 95:13-14 ("[Y]ou don't want to bring harm to the existing schools in your portfolio.").

### g. *If one charter school with the same or a similar name receives a negative report or poor performance review, that would harm the reputation and by extension enrollment of another charter school with a similar name.*

Schimpff Depo 58:6 – 59:10 ("[B]ecause [charter] schools are paid … based on enrollment, there could be financial harm to Legacy Early College if students are enrolling in Legacy Traditional Schools thinking they are enrolling in Legacy Early College.  You live or die by enrollment being a state-sponsored … public charter school. Your business model is really entirely depending upon your enrollment…. [I]f your enrollment starts to be affected because there are confusing names of other schools that are just like yours, … there's a potential financial harm to Legacy.  And there's a potential academic harm, too, because … if they don't run a solid academic program, then that … puts confusion into the community … and then people associate that with Legacy Early College.... [I]f they are not … a good academic school, it risks that … association to the name of what

parents think of it.").

Schimpff 97:19-24 ("I've never encountered – and in my time in Tennessee, my roughly 15 years, I've not heard of a case where … a school of a different entity with the same name wants to come to the same geographic area.  They usually … modify their name.").